# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| **COADY COYOTE CRADDICK,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 3:13 CV 753** |
| **v.** | ) | |
| | ) | |
| **SUPERINTENDENT,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION and ORDER

Coady Coyote Craddick, a *pro se* prisoner, filed a habeas petition under 28 U.S.C.

§ 2254 challenging a prison disciplinary proceeding. (DE # 1.) In MCF #13-05-0220, a

hearing officer found Craddick guilty of threatening, after he sent letters to another

inmate attempting to retrieve an eagle feather he had loaned the inmate for use in his

religious practices.[1] (DE # 9-6 at 1.) The charge was initiated on May 17, 2013, when

Administrative Assistant Clair Barnes wrote a conduct report stating as follows:

> On the above date and time, I became aware that Offender Coady Craddick
> #30794 had given a written letter to another offender, Offender Danny
> Darling #111331. The letter was given to Offender Darling in violation of
> policy. Offenders are prohibited from corresponding with each other
> through written or electronic communication. In this letter, Offender
> Craddick demands that Offender Darling return property that Offender
> Craddick gave to Offender Darling. Offender Craddick states, in part, "The
> disrespect stops here" and "Then explain that to the DNR and DOC
> Administration when they pay you a visit" and "Make sure you explain to
> them how you meet the definition of 'Indian.'" Because Offender Craddick
> is communicating a plan to intimidate another offender into acquiescing to

---

[1] Craddick is Native American and is in possession of a U.S. Department of the Interior Fish and
Wildlife Permit for certain bird feathers to be used in Native American religious ceremonies. (DE # 9-8 at 3.)

his will, Offender Craddick is being charged with committing a B-213 violation.

(DE # 9-1 at 1.) The letters Craddick sent were attached to the conduct report. (*Id*. at 2-6.)

On May 21, 2013, Craddick was formally notified of the charge and given a copy of the conduct report. (DE # 9-1 at 1; DE # 9-2.) He pled not guilty, requested the assistance of a lay advocate, requested witness statements from Assistant Superintendent D. Walls and Correctional Officer J. Fivecoate, and requested a letter he had sent to Walls as physical evidence. (DE # 9-2.) The statements were obtained, and Walls stated as follows:

> I received a letter from Mr. Craddick requesting my help in retrieving an eagle feather that he loaned to Danny Darling #111331. I sent Lt. Schoettmier to retrieve the feather and paperwork, which he did without incident. The letter that was addressed to me by Mr. Craddick was in no way threatening to me.

(DE # 9-4 at 1.) Officer Fivecoate stated as follows:

> I was informed of a council member named Darling, Danny #11331 that had possession of the Native American eagle feather [owned] by Ofd. Craddick, Cody #30754. He asked if I could get this item back from him and I advised him I was busy at this point in time. It would probably be best if he went through the chapl[a]in. As far as the letters from offender to offender go, I have no knowledge of those.

(DE # 9-3 at 1.)

On June 4, 2013, the hearing officer conducted a hearing on the charge. (DE # 9-6 at 1.) Craddick stated in his defense that the chaplain allowed members of the Native American circle to communicate with each other. (*Id*.) He further stated that his letters

to Darling were not meant to be threatening. (*Id.*) Based on the letters, staff reports, and witness statements, the hearing officer found him guilty. (*Id.*) As a result he was demoted to a lower credit-earning class, lost his prison job, and was removed from various prison programs. (*Id.; see also* DE # 1 at 1.) His administrative appeals were denied (DE # 9-7, DE # 9-8), and he thereafter filed this petition.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Craddick's central claim, which he formulates in various ways, is that there was insufficient evidence to find him guilty of threatening. (DE # 1 at 4-6.) The "some evidence" standard is not demanding, and prison officials are given considerable leeway over prison disciplinary matters. *See Hill*, 472 U.S. at 455. By the same token, while "some evidence is not much, it still must point to the accused's guilt." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000); *see also Lenea v. Lane*, 882 F.2d 1171, 1175 (7th Cir. 1989) (evidence insufficient under "some evidence" test where it only established

petitioner's presence in the area when other inmates attempted to escape). Here, Craddick was found guilty of threatening, which is defined as: "Threatening another with bodily harm or with an offense against the person or property." Indiana Department of Correction ("IDOC") Disciplinary Process For Adult Offenders, Policy No. 02-04-101 (eff. June 1, 2012). Upon review of the letters in their entirety, the court agrees with Craddick that they do not contain any statements that meet this definition.

The first document is an open letter from Craddick to "Individuals who Possess A Golden Eagle Feather or Hawk Feather I Personally Handed Down to Them."(DE # 9-1 at 3-4.) In the letter Craddick expresses his view that certain inmates who were in possession of his feathers were not acting in accordance with Native American principles, including using profanity around the feathers, showing off the feathers to others in a "boastful" manner, and failing to attend Native American religious services. (*Id.*) He closed the letter as follows:

> The eagle and hawk feathers were not intended for these purposes listed above. The disrespect stops here, and believe me I have learned a valuable lesson in never to hand down eagle or hawk feathers to individuals who display such behavior and attitudes.
>
> If you feel this pertains to you and you have displayed anything listed above, then you need to return the feather(s) and federal permit.

(DE # 9-1 at 4.)

Darling responded in a three-page letter, expressing his gratitude to Craddick for "blessing me by handing down to me personally a golden eagle feather." (DE # 9-8 at 6.) He described at length how he had been using the feather in his religious practices.

4

He also explained that he had not been attending religious services due to a conflict with his work schedule, which he had attempted to resolve with prison staff but without success. (*Id.*) In closing he stated:

> Chino said he was supposed to show up at my cell with an officer to pick it up. I don't have a problem returning the feather to you, but my prayers have been joined with that feather and I would prefer to give it back to you personally, if that's what you want.
>
> With respect, gratitude, & love
> Danny Darling

(DE # 9-8 at 8.)

Craddick responded with another letter, expressing frustration that Darling had not given the feather to the other inmate Craddick had asked to collect it. (DE # 9-1 at 6.) He went on to state:

> Enough disrespect has been shown to me, my eagle and hawk feathers and paperwork by individuals who claim to walk this path of Native American spirituality and culture. It was recommended by the Department of Natural Resources to collect all my feathers and paperwork, and that's exactly what I am doing! Believe me, my feathers and paperwork are being collected from individuals who do not participate in the circle! I'm not accusing you of being disrespectful or not walking this path, but I have a responsibility to my feathers and they are legally my property to keep account of.
>
> Please give Thunder Eagle the eagle feather and paperwork. Thank you!

(DE # 9-1 at 6.)

Apparently Darling did not return the feather as instructed, because Craddick then wrote a letter to Walls, asking for his help in securing the return of the feather. (DE # 9-1 at 2.) After explaining the situation he stated, "I do not desire to see Offender

Darling in any trouble, only that my feather be returned[.]" (DE # 9-1 at 2.) Thereafter, he wrote a final letter to Darling stating:

> This letter is to inform you that the issue with my Golden Eagle Feather and copy of my Federal Permit have been turned over to the Department of Natural Resources and the DOC Administration for proper action. You left me no choice, its out of my hands now!
>
> Since you believe that you are a bona fide American Indian entitled to eagle feathers, and believe that the Golden Eagle feather and Federal Permit are your property, then explain that to the DNR and DOC Administration when they pay you a visit.
>
> Also, make sure you explain how you meet the definition of "Indian" as stated on the federal permit, and how, by false pretense acquired the Golden Eagle feather and copy of the federal permit?

(DE # 9-1 at 5.)

Even giving ample deference to prison officials, nothing in Craddick's letters could be construed as a threat to inflict physical harm or commit an offense against Darling's person or property. Instead, the letters suggest that Craddick was trying to appeal to Darling's better judgment, or perhaps make him feel guilty, in order to recover property which belonged to Craddick. When his efforts were unsuccessful, he turned the matter over to the authorities. He then advised Darling, in essence, that the matter was out of his hands and that Darling would have to explain himself to the authorities. Portions of his letters might be construed as arrogant or sarcastic, but they are not threatening.

Perhaps the most troubling language in the letters is Craddick's statement "the disrespect stops here." In certain contexts, these words could be said in a threatening

manner. Here, however, Craddick did not convey any threat of harm or other negative ramifications to Darling if he did not return the feather. He merely expressed indignation that, in his view, the feathers were being misused by members of the circle and requested that they be returned to him. Craddick may have violated the rule prohibiting inmates from communicating with each other in writing, although he apparently believed himself exempt from this rule as chairman of the Native American religious circle. (*See* DE # 9-6 at 1.) But that issue is not before the court. The sole issue is whether Craddick's statements constituted threatening, and on that point the evidence is deficient. Accordingly, the guilty finding will be vacated.[2]

For the reasons set forth above, the petition (DE # 1) is **GRANTED**, and the guilty finding in MCF #13-05-0220 is **VACATED**.

**SO ORDERED.**

Date: March 10, 2014

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[2] Craddick also argues that the written statement he received was inadequate and that he was denied an impartial decision-maker because Barnes unduly injected herself into the hearing process. (DE # 1 at 5-6.) It is unnecessary to reach these arguments since the guilty finding is being vacated for lack of evidence. Craddick's other arguments regarding violations of IDOC policies during the hearing process are not cognizable in this proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997).